EL PUEBLO DE PUERTO RICO, apelado, *v.* ELÍAS NAJUL BEZ y RAFAEL RODRÍGUEZ RIVERA, acusados y apelantes.

*Número:* CR-80-37     *Resuelto:* 30 de junio de 1983

---

494

Santiago Polanco Abreu, Yamil Galib Frangie y Baltazar Quiñones Elías, abogados de los apelantes; Héctor A. Colón Cruz, Procurador General, y Lorraine Riefkohl, Procuradora General Auxiliar, abogados de El Pueblo.

PER CURIAM: El Dr. Elías Najul Bez, médico cirujano, fue acusado y convicto por el delito de aborto. Código Penal, Art. 91 (33 L.P.R.A. sec. 4010). Apeló ante nos y el 26 de junio de 1981 confirmamos la condena. *Pueblo* v. *Najul Bez*, 111 D.P.R. 417 (1981).(*) Solicitó reconsideración oportunamente.

En *Pueblo* v. *Duarte Mendoza*, 109 D.P.R. 596, 599 esc. 5 (1980), sostuvimos la prevalencia en nuestra jurisdicción de las normas federales sobre el aborto. Por eso, conscientes de que importante litigación sobre ese tema discurría en los tribunales federales apelativos, decidimos detener nuestra consideración de la solicitud de reconsideración instada en el presente caso hasta que el Tribunal Supremo de los Estados Unidos se expresara de nuevo sobre el tema. Ha resuelto. Ver, *Akron* v. *Akron Center for Reproductive*

---

(*)NOTA DEL COMPILADOR: Aunque el segundo apellido del apelante Najul Bez fue publicado en dicha opinión como *Báez*, en el Tomo 113 D.P.R., por vía de fe de errata, aparece hecha la corrección a *Bez*. 113 D.P.R. LXVII.

*Health,* 43 CCH S. Ct. Bull. P. 3333 (1983); *Planned Parenthood Assn.* v. *Ashcroft,* 43 CCH S. Ct. Bull. P. 3394 (1983); *Simopoulos* v. *Virginia,* 43 CCH S. Ct. Bull. P. 3427 (1983).

Vistos los planteamientos que el apelante esgrime en reconsideración, y considerados los adelantos que las referidas opiniones representan dentro de la doctrina jurisprudencial norteamericana, resolvemos no haber lugar para la reconsideración. Veamos.

■■■ Basándonos en la doctrina de *Roe* v. *Wade,* 410 U.S. 113 (1973), y *Doe* v. *Bolton,* 410 U.S. 179 (1973), hemos sostenido la constitucionalidad del Art. 91 de nuestro Código Penal, que excluye de responsabilidad criminal cuando se hace un aborto "por médico debidamente autorizado a ejercer la medicina en Puerto Rico, con vista a la conservación de la salud o vida de la madre". *Duarte Mendoza,* supra, pág. 606; *Najul Bez,* supra, pág. 420. Señalamos entonces que el concepto de salud del Art. 91 recoge las más amplias nociones de bienestar físico, mental o socioemocional. *Duarte Mendoza,* supra, págs. 607 y 608 esc. 13. *Cf.* American College of Obstetricians and Gynecologysts, II *Précis* 69 (1981). En otras palabras, entendimos que, tras la consulta con la paciente, el Art. 91 del Código Penal excluye de responsabilidad criminal la decisión del médico, *qua* médico, y no una actuación abusiva divorciada de los criterios profesionales. *Duarte Mendoza,* supra, pág. 605; *Najul Bez,* supra, págs. 421 *in fine* a 422; *Roe* v. *Wade,* supra, pág. 166; *Doe* v. *Bolton,* supra, págs. 192, 196–197; *Colautti* v. *Franklin,* 439 U.S. 379, 387 (1979).

■■■ En este caso, no es necesario resolver si las decisiones del 15 de junio de 1983 han variado la posición del Tribunal Supremo de Estados Unidos en forma que afecte nuestra decisión de *Duarte Mendoza.* Esto es, no es pertinente resolver hoy si, bajo el criterio más recientemente esbozado, un médico está compelido por el derecho de intimidad de la paciente a practicar un aborto aunque no crea (o no sea necesario inquirir) que es propio para la preser-

vación de la salud física o mental de ésta. Sí podemos concluir, no obstante, que la nueva postura del Tribunal Supremo de los Estados Unidos no excluye el poder de los estados —y mucho menos el de Puerto Rico— para punir la práctica de un aborto por un médico al margen de los criterios profesionales y sin el consentimiento cabal de la paciente. Así ha sido expresamente reiterado por el Tribunal Supremo en sus decisiones del pasado 15 de junio. *Akron*, supra, pág. 3365 y n. 39: "This Court's consistent recognition of the critical role of the physician in the abortion procedure has been based on the model of the competent, conscientious, and ethical physician." La conducta del apelante está claramente reñida con esos criterios, se separa de los estándares profesionales mínimos y se coloca, por tanto, al margen del Art. 91. Véase, American College of Obstetricians and Gynecologists, *Standards for Obstetric Gynecologic Services*, 5ta. ed., 1982, págs. 51–52 y 54. *Cf. Planned Parenthood of Missouri* v. *Danforth*, 428 U.S. 52, 91–92 n. 2 (1976) (opinión concurrente del Juez Stewart).

Independientemente de los actos de la intervenida Myrna Esther Moya con anterioridad al momento del aborto, no tenemos duda alguna de que en el momento crítico ésta no prestó el consentimiento para la operación. En nuestra opinión del 26 de junio de 1981 expusimos en detalle las circunstancias que rodearon ésta. *Najul Bez*, supra, págs. 418–420. Surge que Myrna Esther se levantó dos veces de la camilla en que fue acostada porque, según declaró, "no quería hacerse el aborto". Regresó a la camilla presa de la coacción moral de su amante, circunstancia que conocía el médico. Una empleada de éste "le puso una sábana en la boca para que no gritara . . . porque la gente se iba a dar cuenta de lo que estaban haciendo allí". Es evidente que no dio su consentimiento.

█ El apelante insiste en su contención de que erró el tribunal sentenciador al no ofrecerle al jurado cierta instrucción que solicitó. Mas, tal y como señalamos en nues-

tra opinión de junio de 1981, el apelante omitió proveernos la totalidad de las instrucciones impartidas. Y sólo podemos evaluar la suficiencia de las instrucciones tomando éstas en su conjunto, y no por partes aisladas. *Pueblo* v. *Acevedo González*, 95 D.P.R. 355, 359 (1967).

Así, pues, *procede que se declare sin lugar la solicitud de reconsideración.*

El Juez Presidente Señor Trías Monge concurre en el resultado sin opinión. El Juez Asociado Señor Torres Rigual no intervino.