EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MIGUEL ÁNGEL CABRERA CEPEDA, acusado y apelante.

*Número:* CR-64-379    *Resuelto:* 18 de marzo de 1965

*Víctor Tirado Saltares,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *Américo Serra, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

El Fiscal formuló acusación contra el apelante por una infracción a la Ley de Narcóticos, imputándole que el día 2 de octubre de 1963 tenía en su posesión la droga narcótica conocida por heroína.

Después de haber renunciado al jurado se celebró un juicio por tribunal de derecho siendo declarado convicto del delito imputádole y sentenciado a cumplir de 5 a 10 años de presidio.

En este recurso imputa al tribunal sentenciador haber cometido error "al admitir en evidencia, con la objeción de la defensa, el 'deck' de heroína que ofreció el Fiscal porque a todas luces resultaba inadmisible por ser el producto de un registro ilegal de la persona del acusado incidental a su arresto ilegal por el agente especial de Rentas Internas".

La prueba de cargo, única presentada en el juicio, consistió en la declaración del agente especial de Rentas Internas, Víctor J. Miller, el "deck" de heroína ocupado al acusado y una estipulación del Fiscal y la defensa sobre lo que declararía el químico Ramón Chinea. (¹)

[1] Se estipuló que el químico Ramón Chinea declararía que recibió de manos del agente especial Víctor J. Miller el "deck" de heroína, identificación del Pueblo; que lo examinó y que del examen surgió que dicho "deck" contenía clorohidrato de diacetilo de morfina.

El testimonio del agente Miller está correctamente resumido por el Procurador General en la siguiente forma:

"Este testigo declaró, en lo pertinente, que es agente especial de rentas internas, que el día 2 de octubre de 1963 como a la 1:30 P.M. se hallaba en servicio de ronda en la Perla, en San Juan; que en la calle Concepción Silva Núm. 13, Interior, observó que el acusado recibía de alguien a través de una ventana de una casa un 'deck' de supuesta heroína; que él se encontraba como a 18 pies de distancia del acusado; que lo que recibió el acusado fue un sobrecito blanco como de una pulgada de largo y media de ancho; que anteriormente a ese día no conocía al acusado y no lo había visto nunca; que con la ayuda de otro agente le quitaron el 'deck' al acusado y lo arrestaron; que arrestó al acusado porque tenía en sus manos un 'deck' de supuesta heroína; que en ese momento creyó que el objeto que tenía el acusado en sus manos era heroína y eso lo indujo a arrestarlo. (T.E. págs. 3–6.) A preguntas de la defensa dijo, en síntesis, que el acusado estaba parado en un callejón de la calle Concepción Silva; que pudo ver las manos de alguien haciéndole entrega del sobrecito al acusado; que vio por primera vez al acusado cuando recibía el 'deck'; que el acusado caminó con el 'deck' en las manos y él trató de quitárselo; que no tenía orden de arresto contra el acusado y no lo conocía anteriormente; y que no había ninguna otra persona por allí en esos momentos. (T.E. págs. 7–9.) Dijo, además, que lleva como cinco años como agente especial de rentas internas y que tiene experiencia en eso; que sabe como es un supuesto 'deck' cuando lo vé a cierta distancia; que tenía conocimiento de que en esa casa se vendía droga y que conocía quien la habitaba pero no había intervenido con ella anteriormente; que posteriormente intervinieron con la casa con una orden de allanamiento y ocuparon 18 'decks'." (T.E. págs. 9–10.)

Independientemente del argumento del Fiscal acusador en el sentido de que resultaba tardío el planteamiento hecho por la defensa al oponerse a la admisión en evidencia del "deck" de heroína porque el mismo se había obtenido mediante un arresto y registro ilegales, los hechos probados nos llevan a la conclusión de que dicha evidencia fue correctamente admitida.

La Regla 11 de las de Procedimiento Criminal, vigente a la fecha de la ocurrencia de los hechos, dispone:

"Regla 11. Arresto Por Un Funcionario Del
Orden Público

Un funcionario del orden público podrá hacer un arresto sin la orden correspondiente:

(a) Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito en su presencia. En este caso deberá hacerse el arresto inmediatamente o dentro de un término razonable después de la comisión del delito. De lo contrario el funcionario deberá solicitar que se expida una orden de arresto.

(b) Cuando la persona arrestada hubiese cometido un delito grave (*felony*), aunque no en su presencia.

(c) Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave (*felony*), independientemente de que dicho delito se hubiere cometido o no en realidad." (*Práctica Forense Puertorriqueña, Procedimiento Criminal,* Tomo 2, pág. 20.)

■ De conformidad con el inciso (a) de esta Regla, no es necesario ya, como lo exigía el inciso (1) del Art. 116 del Código de Enjuiciamiento Criminal, que para que un funcionario del orden público pudiera hacer un arresto sin la correspondiente orden, el delito se cometiera o tratare de cometerse en su presencia. La Regla sólo exige que el funcionario tenga motivos fundados para creer que la persona ha cometido un delito en su presencia. Los hechos del presente caso caen bajo el indicado inciso (a) de la Regla y aunque también el arresto en este caso pudiera justificarse bajo el inciso (c) preceptivo de que un funcionario del orden público puede hacer un arresto sin orden cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave, independientemente de que dicho delito se hubiere cometido o no en realidad, preferimos no entrar a interpretar dicho inciso, el que indudablemente y aunque limitado a los delitos graves, es más abarcador que el

inciso (a) pues bajo aquél, los motivos fundados que tuviere el agente del orden público para hacer un arresto. no dependen de que haya presenciado los hechos que a su juicio constituyen un delito, como en el caso del inciso (a).

Aquí existen circunstancias que en conjunto llevaban a una persona razonable a creer que el apelante estaba cometiendo un delito en su presencia. Estas circunstancias son (a) por su experiencia de cinco años como agente de rentas internas, el agente Miller conoce lo que es un "deck" de heroína y puede identificarlo a cierta distancia aunque no sea con precisión infalible, (b) Miller tenía conocimiento de que en la casa donde el acusado recibió el sobrecito conteniendo el "deck" de supuesta heroína, se traficaba en drogas y precisamente el día de los hechos estaba investigando al dueño de dicha casa; (²) (c) el agente observó como a 18 pies de distancia cuando el acusado recibía en sus manos, a través de una ventana de la mencionada casa el sobrecito blanco como de una pulgada de largo por media pulgada de ancho de supuesta heroína, y (d) el acusado caminó con el "deck" en las manos y el agente se lo quitó y procedió a su arresto.

■ Puede decirse que motivos fundados para creer que la persona arrestada ha cometido un delito grave, por el cual se le arresta, consiste en la posesión de aquella información y conocimiento que lleven a una persona ordinaria y prudente a creer que el arrestado ha cometido el delito. (³)

En Alexander, *The Law of Arrest*, Vol. 1, sec. 76, pág. 432, se explica la regla así:

" 'Debe observar personalmente o mediante el uso de cualquiera de los sentidos, uno o varios de los actos que constituyen el delito, o por información confiable, de forma que entre todos los elementos ello constituya un conocimiento; o un juicio basado

---

(²) La prueba demuestra que unos siete días después la referida casa fue allanada y se ocuparon 18 "decks" de heroína.

(³) Fricke, *Cal. Criminal Procedure*, 4ta. ed., pág. 17.

en el conocimiento personal unido a inferencias que se deriven propiamente de percepciones sensoriales; deben concurrir circunstancias que autorizarían a una personal razonable a creer que éstas constituyen un delito.' "

Concluimos, por lo tanto, que tanto el arresto como el registro del acusado fueron legales.

*Se confirmará la sentencia apelada.*